UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:20CR58 (KAD) |
| v. | VIOLATIONS: |
| SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," Kellz," and "Man Man," | 18 U.S.C. § 1962(c) (RICO) |
| ANTOINE SISTRUNK, | 18 U.S.C. § 3 (Accessory After the Fact) |
| TA'RON PHARR, a.k.a. "250," and | 18 U.S.C. § 2312 (Transportation of Stolen Vehicles) |
| JAYLEN WILSON, a.k.a. "Jay-Dot" | 18 U.S.C. § 1951(a) (Hobbs Act Robbery) |

18 U.S.C. §§ 373 and 1512(a)(1) (Solicitation of Witness Tampering)

18 U.S.C. § 1512(b)(3) (Witness Tampering)

21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and (b)(1)(D) (Possession with Intent to Distribute Controlled Substances)

18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(2) (Possession of Firearm in Furtherance of Narcotics Trafficking Crime)

18 U.S.C. § 2 (Aiding and Abetting)

United States District Court
District of Connecticut
FILED AT   NEW HAVEN
Oct. 13th        20 20
Roberta D. Tabora, Clerk
By_____
        Deputy Clerk

SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

COUNT ONE
(RICO)

The Enterprise

1.     At all times relevant to this Second Superseding Indictment, the defendants

SHAKALE BRANTLEY, a.k.a. "Kellz," "Charlie Wilson," and "Man Man," JAYLEN WILSON,

1

a.k.a. "J-Dot," and TA'RON PHARR, a.k.a. "250," and others known and unknown to the Grand Jury, were members and associates of the Bridgeport street gang "O.N.E.," a criminal organization whose members and associates engaged in, among other activities, narcotics distribution and acts of violence, including murder, robberies and assault.

2.      At all times relevant to this Second Superseding Indictment, O.N.E., which stands for "Original North End," and alternatively "Only North End," (hereinafter "O.N.E.") including its leaders, members and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.      O.N.E. (also referred to herein as the "Enterprise" and the "Gang") began as a local street gang in the Trumbull Gardens area of Bridgeport, Connecticut, but had members and associates who were either incarcerated or living throughout Bridgeport and surrounding towns, including Shelton, Derby, and Ansonia, Connecticut. O.N.E. operated principally in and around the northern part of Bridgeport. O.N.E. members and associates often communicated through various forms of electronic communication, including Facebook messenger, SnapChat, phone calls, text messages and music videos posted online. At times, members and associates used gang symbols and code words to communicate in order to avoid revealing their criminal activity.

4.      Members and associates of O.N.E. were expected to protect the name, reputation and status of the Gang from rival gang members and other persons. To protect the Gang and enhance its reputation, O.N.E. members and associates were expected to use any means necessary

2

to force respect from those who had shown disrespect, including committing acts of intimidation, threats of violence, and violence.

5.      The defendants participated in the operation and management of the Enterprise and participated in unlawful and other activity in furtherance of the conduct of the Enterprise's affairs.

6.      O.N.E., at all times relevant to this Second Superseding Indictment, was aligned with another street-level criminal organization from the central part of Bridgeport. Specifically, O.N.E. was aligned with members of the "Greene Homes Boyz," which was also known as the "Hotz" or "GHB," a gang based in the Greene Homes Apartments, located within the Hollow neighborhood of Bridgeport (hereinafter the "Greene Homes Boyz"). These two gangs were aligned against rival criminal organizations in Bridgeport, such as the East End Gang, the East Side Gang, the PT Barnum Gang, and 150. Members of O.N.E. would often join forces with individuals from the Greene Homes Boyz when engaging in acts of violence against the East End, the East Side, PT Barnum and 150 gangs. As such, gang members from O.N.E. and the Greene Homes Boyz often coordinated, collaborated, and worked together and with each other as a single organization.

7.      O.N.E. members had multiple criminal objectives, one of which was enrichment of the members and associates of the Enterprise through the distribution of controlled substances, namely heroin and marijuana.

8.      Members and associates of O.N.E sold heroin and marijuana, in and around Bridgeport, but primarily in the northern part of Bridgeport. O.N.E. members and associates referred customers to each other and engaged in narcotics trafficking together. Often, drug related

activity was coordinated and facilitated by text messaging and Facebook messenger. O.N.E. members would share customers and refer each other to customers.

9.      Although it did not have a rigid hierarchy, during the period relevant to this Second Superseding Indictment, O.N.E. was led by persons known and unknown to the Grand Jury. Hierarchy was determined, in part, by reputation for violence, which included known murders and assaults against rival gang members and acquittals on such charges in Connecticut Superior Court. Members ascended into positions of prominence within the Enterprise, in part, based on their commission of multiple shootings against rival gang members and other individuals who challenged the members of the Enterprise. Members also gained stature within O.N.E. through jury acquittals in the Superior Court, which O.N.E. members and their Greene Home Boyz allies achieved through witness intimidation, witness tampering and jury intimidation.

10.      Members and associates of O.N.E. committed, conspired, attempted and threatened to commit acts of violence, to protect the Enterprise and to protect fellow members and associates of the Enterprise. These acts of violence included acts of murder, robbery, and assault intended to protect the Enterprise from rival gangs and to otherwise promote the standing and reputation of O.N.E. amongst rival gangs as well as amongst other O.N.E. members, and to protect their drug selling territory.

11.      Members of O.N.E. would use the proceeds of controlled substance sales to purchase firearms from both inside and outside Connecticut, often from a common source.

12.      Members and associates of O.N.E. committed and agreed, conspired, attempted, and threatened to commit acts of violence to protect fellow members and associates of the Enterprise and the reputations of deceased members of the Enterprise. These acts of violence

4

included shootings and acts of murder intended to retaliate against members of rival gangs who encroached on the territory controlled by O.N.E. or who had shot or killed O.N.E. members or associates, or otherwise to promote the standing and reputation of O.N.E. amongst rival gangs. Certain O.N.E. members and associates would create and upload music videos to display O.N.E's arsenal of firearms, to take credit for acts of violence against rival gang members, and to enhance their own standing and reputation in the North End of Bridgeport.

<u>Purposes of the O.N.E. Enterprise</u>

13.     The purposes of the Enterprise included the following:

a.      Enriching the members and associates of the Enterprise through, among other things, the distribution and sale of controlled substances.

b.      Preserving and protecting the power, territory, reputation, and profits of the Enterprise through the use of intimidation, violence, threats of violence, robberies, assaults, and acts of murder.

c.      Keeping victims and potential victims, witnesses and rival gang members in fear of the Enterprise and in fear of its members and associates through threats of violence and acts of violence.

d.      Providing assistance to members and associates of the Enterprise who committed crimes for and on behalf of the Enterprise.

e.      Providing financial support and information to members and associates of the Enterprise, including those incarcerated for committing acts of violence, robbery, distribution of controlled substances and other offenses.

f.      Using the proceeds of controlled substance sales to purchase firearms from inside or outside the State of Connecticut.

g.      Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities, through acts of intimidation and violence against potential witnesses, including members and associates of O.N.E., to crimes committed by members of the Enterprise.

h.      Hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing members and associates of the Enterprise.

<u>Means and Methods of the Enterprise</u>

14.     Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a.      Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts of murder and robbery, against rival gang members and other individuals adverse to the Enterprise.

b.      Members and associates of the Enterprise facilitated, promoted and celebrated the criminal conduct of the Enterprise, namely the narcotics distribution, acts involving violence, and the use and possession of firearms, on social media websites such as Facebook and SnapChat.

c.      Members and associates of the Enterprise promoted and celebrated the criminal conduct of the Enterprise, namely acts of violence against rival gang members, in rap music uploaded to websites such as SoundCloud and YouTube.

d.      Members and associates of the Enterprise obtained, possessed, shared, used and disposed of firearms from inside and outside the State of Connecticut.

e.      Members and associates of the Enterprise distributed, and aided and abetted the distribution of controlled substances.

f.      Members and associates of the Enterprise committed acts of intimidation and made threats as a means of deterring and/or punishing any potential witnesses to their crimes and in connection with protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities.

<u>The Racketeering Violation</u>

15.      From approximately January 2018 to the present, in the District of Connecticut and elsewhere, the defendants SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," and others known and unknown to the Grand Jury, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of O.N.E., an enterprise engaged in interstate and foreign commerce, through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the following racketeering acts set forth below.

<u>Racketeering Act One: Interstate Transport of Stolen Vehicle</u>

16.      On or about August 9, 2018, in the District of Connecticut and elsewhere, BRANTLEY, PHARR, and WILSON, and others known and unknown to the Grand Jury, did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a 2015 Jeep Grand Cherokee, bearing Vehicle Identification Number 1C4RJFAG1FC875615, from the State of New

York to the State of Connecticut, knowing the same to be stolen, in violation of Title 18, United States Code, Sections 2312 and 2.

### Racketeering Act Two: Conspiracy to Commit Murder

17.    From on or about August 9, 2018, to on or about August 13, 2018, in the District of Connecticut and elsewhere, BRANTLEY, PHARR, and WILSON, and others known and unknown to the Grand Jury, knowingly conspired to murder members and associates of a rival gang known as the East End Gang, in violation of Connecticut General Statutes §§ 53a-54a (murder) and 53a-48 (conspiracy), in that with intent to cause the death of members of a rival gang known as the East End Gang, BRANTLEY, PHARR and WILSON agreed with one another and with others, known and unknown to the Grand Jury, to engage in and cause the performance of such murder.

### Racketeering Act Three: Arson

18.    On or about August 13, 2018, in the District of Connecticut, BRANTLEY and PHARR, and others known to the Grand Jury, including Henry Floy and Antoine Sistrunk, who are charged separately, with intent to destroy and damage a building, as that term is defined in Connecticut General Statutes § 53a-100 (defining building to include a vehicle), started a fire and such fire was intended to conceal some criminal act, in violation of Connecticut General Statutes §§ 53a-112(a)(1)(B) and 53a-8, in that BRANTLEY and PHARR aided and abetted the starting of a fire of a 2015 Jeep Grand Cherokee, bearing Vehicle Identification Number 1C4RJFAG1FC875615, and said fire was intended to conceal another criminal act, that is, murder.

<u>Racketeering Act Four: Robbery</u>

19.     The defendant BRANTLEY committed the following acts, either one of which alone would constitute the commission of Racketeering Act Four:

<u>Hobbs Act Robbery</u>

20.     On or about October 22, 2018, in the District of Connecticut, BRANTLEY, and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that BRANTLEY did unlawfully take and obtain, and cause to be taken and obtained, personal property consisting of marijuana from and in the presence of Victim #1, whose identity is known to the Grand Jury, against Victim #1's will, by means of actual and threatened force, violence, and fear of injury to his person, in violation of Title 18, United States Code, Sections 1951(a) and 2.

<u>State Law Robbery</u>

21.     On or about October 22, 2018, in the District of Connecticut, BRANTLEY, and others known and unknown to the Grand Jury, took without consent marijuana from Victim #1, and in the course of such taking, used physical force upon the person of Victim #1 for the purpose of preventing and overcoming resistance to the taking of the marijuana and for the retention thereof immediately after the taking, as defined in Connecticut General Statutes § 53a-133, and was aided and abetted by other persons actually present, in violation of Connecticut General Statutes §§ 53a-135(a)(1) and 53a-8.

Racketeering Act Five: Robbery

22.     The defendant BRANTLEY committed the following acts, either one of which alone would constitute the commission of Racketeering Act Five:

Hobbs Act Robbery

23.     On or about November 5, 2018, in the District of Connecticut, BRANTLEY, and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that BRANTLEY did unlawfully take and obtain, and did cause to be taken and obtained, personal property consisting of marijuana from and in the presence of Victim #1, whose identity is known to the Grand Jury, against Victim #1's will, by means of actual and threatened force, violence, and fear of injury to his person, in violation of Title 18, United States Code, Sections 1951(a) and 2.

State Law Robbery

24.     On or about November 5, 2018, in the District of Connecticut, BRANTLEY, and others known and unknown to the Grand Jury, took without consent marijuana from Victim #1, and in the course of such taking, used physical force upon the person of Victim #1 for the purpose of preventing and overcoming resistance to the taking of the marijuana and for the retention thereof immediately after the taking, as defined in Connecticut General Statutes § 53a-133, and was aided and abetted by other persons actually present, in violation of Connecticut General Statutes §§ 53a-135(a)(1) and 53a-8.

10

<u>Racketeering Act Six: Possession with Intent to Distribute Heroin</u>

25.     On or about February 18, 2020, in the District of Connecticut, PHARR and WILSON did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable quantity of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

<u>Racketeering Act Seven: Tampering with a Witness</u>

26.     From on or about March 28, 2020, to on or about April 8, 2020, in the District of Connecticut, BRANTLEY, and others known and unknown to the Grand Jury, did knowingly attempt to kill Victim #1, whose identity is known to the Grand Jury, by causing Victim #1 to overdose on fentanyl with the intent to prevent the attendance and testimony of Victim #1 in an official proceeding, that is, at a trial related to the commission of a Federal offense, namely Hobbs Act Robbery, in violation of Title 18, United States Code, Sections 1512(a)(1)(A) and 2.

<u>Racketeering Act Eight: Possession with Intent to Distribute Heroin</u>

27.     On or about July 7, 2020, in the District of Connecticut, PHARR and WILSON did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable quantity of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

<u>Racketeering Act Nine: Controlled Substance Distribution Conspiracy</u>

28.     From at least 2018 to the present, in the District of Connecticut, BRANTLEY, and other O.N.E. members known and unknown to the Grand Jury, did knowingly and intentionally

combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

29.     It was a part and object of the conspiracy that BRANTLEY, together with other O.N.E. members known and unknown to the Grand Jury, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841 and 846.

30.     The controlled substances involved in the offense were a mixture and substance containing a detectable amount of heroin and a mixture and substance containing a detectable amount of marijuana, both Schedule I controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(C) and 841(b)(1)(D).

All in violation of Title 18, United States Code, Sections 1961 and 1962(c).

<u>COUNT TWO</u>
(Accessory After the Fact to VICAR Murder)

31.     The allegations set forth in Paragraphs 1 through 14 are incorporated by reference.

32.     On or about August 13, 2018, in the District of Connecticut, for the purpose of gaining entrance to and maintaining and increasing position in O.N.E., an enterprise engaged in racketeering activity, enterprise members and associates known to the Grand Jury did intentionally and knowingly murder Len Smith, in violation of Conn. Gen. Stats. § 53a-54a and § 53a-8, all in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

33.     On or about August 13, 2018, in the District of Connecticut, the defendants SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," and ANTOINE

SISTRUNK, and others known and unknown to the Grand Jury, including Henry Floy, charged separately, knowing that the above-described offense against the United States had been committed, received, relieved, comforted, and assisted the enterprise members and associates known to the Grand Jury in order to hinder and prevent the apprehension, trial and punishment of said enterprise members and associates, to wit, by destroying and assisting in the destruction of the automobile and other evidence used to commit and relating to the above-described murder.

All in violation of Title 18, United States Code, Sections 3 and 2.

## COUNT THREE
(Interstate Transportation of Stolen Vehicle)

34.     On or about August 9, 2018, in the District of Connecticut and elsewhere, the defendants SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "Jay-Dot," and Henry Floy, who is charged separately, did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a 2015 Jeep Grand Cherokee, bearing Vehicle Identification Number 1C4RJFAG1FC875615, from the State of New York to the State of Connecticut, knowing the same to be stolen.

In violation of Title 18, United States Code, Sections 2312 and 2.

## COUNT FOUR
(Interference with Commerce by Robbery)

35.     On or about October 22, 2018, the exact date being unknown to the Grand Jury, in the District of Connecticut, the defendant SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," along with others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and did attempt to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles

and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that BRANTLEY did unlawfully take and obtain, and cause to be taken and obtained, personal property consisting of marijuana from and in the presence of Victim #1, whose identity is known to the Grand Jury, against his will, by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

<u>COUNT FIVE</u>
(Interference with Commerce by Robbery)

36.     On or about November 5, 2018, the exact date being unknown to the Grand Jury, in the District of Connecticut, the defendant SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," along with others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and did attempt to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that BRANTLEY did unlawfully take and obtain, and did cause to be taken and obtained, personal property consisting of marijuana from and in the presence of Victim #1, whose identity is known to the Grand Jury, against his will, by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

<u>COUNT SIX</u>
(Conspiracy to Interfere with Commerce by Robbery)

37.     From on or about October 22, 2018, to on or about November 5, 2018, the exact dates being unknown to the Grand Jury, in the District of Connecticut, the defendant SHAKALE

14

BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," along with others known and unknown to the Grand Jury, did conspire to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that BRANTLEY agreed with others to take personal property consisting of marijuana from and in the presence of Victim #1, whose identity is known to the Grand Jury, against his will, by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Section 1951(a).

<u>COUNT SEVEN</u>
(Solicitation of Witness Tampering)

38.     From on or about March 28, 2020, to April 3, 2020, the exact dates being unknown to the Grand Jury, in the District of Connecticut, the defendant SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," with the intent that persons known and unknown to the Grand Jury engage in conduct constituting a felony that has as an element the use and attempted use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such persons known and unknown to the Grand Jury to kill and attempt to kill Victim #1, whose identity is known to the Grand Jury, with the intent to prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission or possible commission of a Federal offense, in violation of Title 18, United States Code, Section 1512(a)(1)(C).

All in violation of Title 18, United States Code, Section 373.

## COUNT EIGHT
(Tampering with a Witness by Threat)

39.     From on or about March 28, 2020, to on or about April 8, 2020, the exact dates being unknown to the Grand Jury, in the District of Connecticut, the defendant SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," did knowingly threaten and attempt to threaten Victim #1, and did knowingly corruptly persuade another person and did attempt to do so, by engaging in conduct intended to cause bodily injury to and the death of Victim #1, whose identity is known to the Grand Jury, with the intent to prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission of a Federal offense, namely Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a).

All in violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT NINE
(Possession with Intent to Distribute Heroin)

40.     On or about February 18, 2020, in the District of Connecticut, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable quantity of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT TEN
(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

41.     On or about February 18, 2020, in the District of Connecticut, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," knowingly possessed a

firearm, that is, a Smith & Wesson SD40 VE, bearing serial number FYK5414, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, the crime charged in Count Nine of this Second Superseding Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(2), and 2.

### COUNT ELEVEN
(Possession with Intent to Distribute Heroin and Cocaine Base)

42.    On or about July 7, 2020, in the District of Connecticut, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable quantity of heroin, a Schedule I controlled substance, and a detectable amount of cocaine base, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

### COUNT TWELVE
(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

43.    On or about July 7, 2020, in the District of Connecticut, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," knowingly possessed a firearm, that is, a .40 caliber Glock, model 23 handgun, bearing serial number MMF608, and loaded with an extended magazine containing 16 rounds, a .45 caliber Black Taurus PT handgun, bearing serial number NGM98523, and a .45 caliber Glock model 37 semi-automatic handgun, bearing serial number AAE0229, in furtherance of a drug trafficking crime for which they may be prosecuted in

a court of the United States, that is, the crime charged in Count Eleven of this Second Superseding Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(2), and 2.

## FORFEITURE ALLEGATION
### (Interstate Transportation of Stolen Vehicle)

44.      Upon conviction of the offense alleged in Count Three of this Second Superseding Indictment, that is, Interstate Transportation of a Stolen Vehicle in violation of Title 18, United States Code, Section 2312, the defendants SHAKALE BRANTLEY, a.k.a. "Charlie Wilson," "Kellz," and "Man Man," TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "Jay-Dot," shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(F)(iv) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, that represents or is traceable to the gross proceeds obtained directly or indirectly, from a violation of Title 18 United States Code, Section 2312, including but not limited to the following: a sum of money equal to the total amount of any property, real or personal, that constitutes or is derived from proceeds obtained as a result of interstate transportation of the stolen vehicle alleged in Count Three.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

FORFEITURE ALLEGATION
(Controlled Substance Offenses)

45.     Upon conviction of the controlled substance offenses alleged in Count Nine and Eleven of this Second Superseding Indictment, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, all right, title, and interest in any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violation of Title 21, United States Code, Section 841, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, those violations.

46.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value  of the forfeitable property described above.

All in accordance with Title 21, United States Code, Section 853 and Rule 32.2(a), Federal Rules of Criminal Procedure.

FORFEITURE ALLEGATION
(Firearms Offenses)

47.     Upon conviction of the offenses alleged in Count Ten and Count Twelve of this Second Superseding Indictment, the defendants TA'RON PHARR, a.k.a. "250," and JAYLEN WILSON, a.k.a. "J-Dot," shall forfeit to the United States, pursuant to Title 18, United States

19

Code, Section 924(d), and Title 28, United States Code, Section 2461(c), the firearms involved in the commission of the offenses including, but not limited to: a Smith & Wesson SD40 VE, bearing serial number FYK5414, which was seized on or about February 18, 2020, and a .40 caliber Glock model 23 handgun, bearing serial number MMF608, a .45 caliber Black Taurus PT handgun, bearing serial number NGM98523, and a .45 caliber Glock model 37 semi-automatic handgun, bearing serial number AAE0229, and related ammunition, all of which were seized on or about July 7, 2020.

All in accordance with Title 18, United States Code, Section 924, and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

LEONARD C. BOYLE
FIRST ASSISTANT UNITED STATES ATTORNEY

RAHUL KALE
ASSISTANT UNITED STATES ATTORNEY

PETER D. MARKLE
ASSISTANT UNITED STATES ATTORNEY

KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY

JOCELYN C. KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY